**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DAWN P.,

                Plaintiff,

       v.                                  6:17-CV-1265
                                               (DJS)

NANCY A. BERRYHILL, *Acting Commissioner of Social Security*,

                Defendant.

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| OFFICE OF PETER W. ANTONOWICZ<br>Counsel for Plaintiff<br>148 West Dominick Street<br>Rome, New York 13440 | PETER W. ANTONOWICZ, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>Office of Regional General Counsel<br>Counsel for Defendant<br>26 Federal Plaza - Room 3904<br>New York, New York 10278 | REBECCA H. ESTELLE, ESQ.<br>DAVID B. MYERS, ESQ.<br>Special Assistant U.S. Attorneys |

**DANIEL J. STEWART**
**United States Magistrate Judge**

# MEMORANDUM-DECISION AND ORDER[1]

Currently before the Court, in this Social Security action filed by Dawn P. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 13 & 15. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **denied,** and Defendant's Motion for Judgment on the Pleadings is **granted**. The Commissioner's decision denying Plaintiff's disability benefits is **affirmed** and Plaintiff's Complaint is **dismissed**.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1964. Dkt. No. 8, Admin. Tr. ("Tr."), p. 217. Plaintiff reported completing high school. Tr. at p. 38. Plaintiff has past work experience as a home health aide, assembler, can counter, and cashier. Tr. at pp. 106-107. Plaintiff alleges disability due to diabetes, edema, neuropathy, depression, falls, high blood pressure, anxiety, hypoactive thyroid, and sleep apnea. Tr. at p. 98.

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 4 & General Order 18.

**B. Procedural History**

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on August 14, 2014. Tr. at pp. 14 & 217-229. On October 29, 2014, she also applied for disabled widow's benefits. Tr. at p. 72. Plaintiff's applications were initially denied on March 23, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 125-126. Plaintiff appeared at a hearing before ALJ Roxanne Fuller on September 12, 2016. Tr. at pp. 34-69. On February 9, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 14-27. On October 6, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-5.

**C. The ALJ's Decision**

In her decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 29, 2014, the alleged onset date. Tr. at p. 17. Second, the ALJ found that Plaintiff had the following severe impairments: diabetes, bilateral cubital tunnel syndrome, lower extremity edema, degenerative disc disease, and obesity. *Id.* Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart

3

P, App. 1 (the "Listings"). Tr. at p. 19. Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work except:

> occasional climb ramps or stairs; never climb ladders, ropes or scaffolds; occasional balance, stoop, crouch, kneel and crawl; frequent reaching and overhead reaching with both arms; frequent handling objects, that is gross manipulation, with both hands; frequent fingering, that is fine manipulation, with both hands; occasional exposure to moving mechanical parts; occasional operating a motor vehicle; occasional exposure to unprotected heights.

*Id.* Fifth, the ALJ found that Plaintiff could perform past relevant work as an assembler and a counter clerk. Tr. at p. 25. Sixth, the ALJ also found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. at pp. 26-27. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at p. 27.

### D. The Parties' Briefing on Their Cross-Motions

Plaintiff raises three issues for consideration by the Court. *See generally* Dkt. No. 13, Pl.'s Mem. of Law. First, Plaintiff contends that the ALJ erred at step two of the sequential analysis by not including diabetic neuropathy as a severe impairment from which Plaintiff suffered. *Id.* at pp. 7-8. Second, that the ALJ failed to properly assess the medical evidence. *Id.* at pp. 8-13. Finally, Plaintiff alleges that it was error not to reach the conclusion that she was disabled under the Medical-Vocational Guidelines in the applicable regulations. *Id.* at pp. 13-14. Plaintiff contends that the matter should be reversed for a calculation of benefits. *Id.* at p. 14.

In response, Defendant takes the position that there was no error at step two, but that any error was, in any event, harmless in light of the fact that the ALJ continued with the sequential analysis. Dkt. No. 15, Def.'s Mem. of Law at pp. 4-5. Defendant also maintains that the ALJ performed an appropriate review of the medical record, made an RFC determination that was supported by substantial evidence in the record, and that the finding that Plaintiff was not disabled should be affirmed. *Id.* at pp. 5-9.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence

5

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential

6

evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

# III. ANALYSIS

## A. Step Two Severity Determination

Plaintiff alleges first that the ALJ erred in not finding her diabetic neuropathy to be a severe impairment at Step Two of the sequential analysis. Pl.'s Mem. of Law at pp. 7-8. A review of the record finds that this argument is no basis for relief.

The ALJ found that Plaintiff suffered from following severe impairments: diabetes; bilateral cubital tunnel syndrome; lower extremity edema; degenerative disc disease; and obesity. Tr. at p. 17. As Plaintiff notes, the record is replete with references to her suffering from diabetic neuropathy. *See* Pl.'s Mem. of Law at p. 8 (citing to administrative record). A significant number of the records relied on by Plaintiff are from Dr. Francis Constantine, her primary care physician, in which he repeatedly lists Plaintiff's diagnosis as diabetes mellitus with diabetic neuropathy, neuropathy in diabetes, or diabetes mellitus diabetic peripheral neuropathy. *See, e.g.*, Tr. at pp. 630-715, & 761-775. Other providers have similarly diagnosed Plaintiff. Tr. at p. 393. It is clear, therefore, that Plaintiff's treating doctor viewed Plaintiff's neuropathy as being directly associated with Plaintiff's diabetes. As such, the ALJ did not err in not including the diabetic neuropathy as a distinct severe impairment.

Even were it error to have not separately identified Plaintiff's diabetic neuropathy as a distinct severe impairment, the Court would nonetheless find that error harmless. "The omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in

8

her RFC determination." *Pascal T. v. Berryhill*, 2019 WL 316009, at *7 (N.D.N.Y. Jan. 24, 2019) (citing cases); *see also Margarita S. v. Comm'r of Soc. Sec.*, 2019 WL 266678, at *5 (N.D.N.Y. Jan. 18, 2019); *Terry M. v. Comm'r of Soc. Sec.*, 2018 WL 6807218, at *5 (N.D.N.Y. Dec. 27, 2018). Plaintiff objects that the ALJ "failed to properly consider the limitations" of this condition which she identifies as interfering with her use of her hands. Pl.'s Mem. of Law at p. 8. The record reflects that despite not specifically finding diabetic neuropathy to be a discrete severe impairment, she proceeded beyond step two and clearly considered its effects on her functional abilities. The ALJ noted Plaintiff's neuropathy and the alleged impact it had on the use of her hands. Tr. at p. 23. The RFC determination addressed these limitations and specifically limited Plaintiff to work involving frequent handling of objects and frequent fingering. Tr. at p. 19. In this context "[f]requent means occurring from one-third to two-thirds of the time." *Lewis v. Comm'r of Soc. Sec.*, 2018 WL 557869, at *11 (N.D.N.Y. Jan. 16, 2018) (citing SSR 85-15, 1985 WL 56857, at *6). Such a limitation is in line with the opinions of Drs. Constantine and Orlando, on whom Plaintiff strongly relies, that she had only "mild" limitations on fingering and dexterity. Tr. at pp. 743 & 847.

As a result, even if the ALJ erred in not making the separate listing, any error was harmless since the ALJ clearly considered this condition and its symptoms in assessing Plaintiff's functional capacity.

9

## B. The ALJ's Evaluation of Medical Opinions

Under the Regulations, a treating physician's opinion as to the nature and severity of a claimant's impairment is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999). However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. § 416.927(e)(1) (Commissioner provides the ultimate decision on disability). The treating physician doctrine recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time non-examining, non-treating physician. 20 C.F.R. § 416.927(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek v. Colvin*, 802

F.3d 370, 375 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

Here, the ALJ analyzed the opinions of two of Plaintiff's treating doctors, Drs. Constantine and Orlando, and afforded them little weight. Tr. at pp. 24-25. Plaintiff objects that this was error. Pl.'s Mem. of Law at pp. 8-13. Dr. Constantine submitted three different medical source statements. Tr. at pp. 739-740, 742-743, & 843-844. Dr. Orlando submitted one medical source statement. Tr. at pp. 846-847. While these opinions were afforded only little weight, the ALJ provided detailed explanations, consistent with the requirements set forth in Second Circuit case law, regarding her decision not to afford controlling weight and, therefore, there is no basis for finding error.

Defendant readily admits that Dr. Constantine and Dr. Orlando were treating physicians within the meaning of the applicable regulations. Def.'s Mem. of Law at pp. 24-25. Although the ALJ did not specifically recite the length, nature and extent of Dr. Constantine's treatment, her recitation of Plaintiff's medical history details that treatment. Tr. at pp. 20-24. The record also shows that the ALJ made specific note of the fact that Dr. Orlando treated Plaintiff "extensively." Tr. at p. 25. This amply demonstrates that the first factor was considered. *See McGannon v. Colvin*, 2013 WL 1296383, at *2 (N.D.N.Y. Mar. 28, 2013) ("if an ALJ omits express discussion of

particular factors, h[er] analysis may nevertheless be found legally sound if it is 'clear from the record as a whole' that such factors were properly considered").

The record also demonstrates that the ALJ considered the consistency and supportability as to each opinion.

The first medical source statement from Dr. Constantine was dated February 1, 2016. Tr. at pp. 739-740. In it, Dr. Constantine opined that Plaintiff could frequently carry twenty pounds or less, could stand or walk up to three hours in a workday, could sit up to five hours, could occasionally climb, balance, crouch, crawl, or stoop, and had no limits on her ability to handle, finger, or reach. *Id.* Despite this, the opinion also said that Plaintiff would be expected to miss work more than four days per month.

Dr. Constantine's second statement came just 32 days after this initial opinion and significantly reduced his assessment of Plaintiff's functioning. In that statement Dr. Constantine opined that Plaintiff could lift or carry ten pounds only occasionally and no weight frequently, down from twenty pounds frequently the prior month. Tr. at pp. 739 & 742. He also indicated that Plaintiff would be able to stand or walk only one hour a day, down from three. *Id.*

Dr. Constantine's final opinion, rendered in September 2016, further limited Plaintiff's functional abilities. He indicated, for example, that Plaintiff could stand or walk without a break for just ten minutes, down from twenty minutes in March. He also found that Plaintiff could sit for only twenty minutes, down from one hour. Tr. at p.

843. Dr. Orlando's report largely mirrored the limitations set forth in Dr. Constantine's September opinion. Tr. at pp. 846-847.

The record clearly demonstrates that the ALJ considered the extent to which the medical evidence supported and was consistent with these opinions. Limited weight was afforded to these opinions, in part, because they were not supported by, and were inconsistent with, the objective medical evidence. The ALJ noted, for example, that the limitations were not consistent with Plaintiff's self-reported ability to walk 10,000 steps a day and Dr. Constantine's own direction that Plaintiff exercise more. Tr. at p. 24. These were appropriate grounds for discounting this opinion. *Robert B. v. Comm'r of Soc. Sec.*, 2018 WL 4215016, at *5 (N.D.N.Y. Sept. 5, 2018) ("The ALJ also specifically made note of inconsistencies between the limitations proffered by [the doctor's] opinion and both the objective evidence and Plaintiff's own activities.").

The ALJ noted that the March opinion from Dr. Constantine offers no explanation for the sudden change in Plaintiff's functional abilities from one month earlier and nothing in the medical record indicates any change of circumstances that would account for the difference in opinions. Tr. at p. 24. It does not appear that Plaintiff saw her doctor at any time between the February and March opinions and the stated reason for the March visit was to have disability paper work filled out. *See* Tr. at p. 766. This unexplained change in circumstances was a legitimate basis for affording the opinion little weight. *Delossantos v. Comm'r of Soc. Sec.*, 2017 WL 4011265, at *7

13

(N.D.N.Y. Sept. 11, 2017) (proper for ALJ to afford limited weight to "conflicting, conclusory, and unexplained statement" regarding Plaintiff's ability to work).

As to the September opinion from Dr. Constantine, the ALJ once again noted a lack of objective evidence that Plaintiff's condition had worsened as one basis for affording this opinion little weight. Tr. at p. 24. She made similar findings concerning Dr. Orlando's opinion, noting in particular, the lack of record evidence in Dr. Orlando's treatment notes to support the limitations imposed. Tr. at p. 25. As to that opinion, she also noted the limited scope of Dr. Orlando's treatment. Tr. at p. 25.

Plaintiff makes several specific, but unpersuasive objections to the ALJ's determination. Contrary to Plaintiff's assertions, it was not error for the ALJ to rely on the absence of functional limitations in the treatment notes of Plaintiff's providers. "The hearing officer is entitled to rely not only on what the record says, but also on what it does not say." *Sipe v. Astrue*, 873 F. Supp. 2d 471, 478 (N.D.N.Y. 2012) (citing cases). It is well established that the ALJ may properly consider the fact that treatment notes fail to reference functional limitations in evaluating the weight of medical opinions. *Brush v. Berryhill*, 294 F. Supp. 3d 241, 262 (S.D.N.Y. 2018); *Townsend v. Comm'r of Soc. Sec.*, 2011 WL 3648346, at *6 (E.D.N.Y. Aug. 17, 2011); *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009). Such reliance was particularly appropriate here given the frequent changes to Dr. Constantine's assessment of Plaintiff's abilities over a short time and the lack of objective evidence to support the limitations on her abilities

14

and the absence of stated limitations despite Dr. Orlando's extensive treatment of Plaintiff. Tr. at pp. 24 & 25. The ALJ's reliance on the lack of functional limitations in Plaintiff's medical records, therefore, was reasonable and is further evidence of the fact that the limitations imposed by Drs. Constantine and Orlando were not supported by the longitudinal medical record.

Plaintiff also contends that the ALJ erred in appearing to give less weight to the forms used by Drs. Constantine and Orlando because they were "check box" forms. Pl.'s Mem. of Law at pp. 12-13. Contrary to Plaintiff's assertions, courts have routinely recognized the failure to provide a requested narrative explanation on a check box form as a legitimate reason for affording a treating source opinion limited weight. *See, e.g.*, *Z.J.F. by Conkling v. Comm'r of Soc. Sec.*, 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018) (citing *Camille v. Colvin*, 652 Fed. Appx. 25, 27 (2d Cir. 2016)); *Jones v. Comm'r of Soc. Sec.*, 2016 WL 11477508, at *10 (N.D.N.Y. Aug. 8, 2016), *report and recommendation adopted sub nom. Jones v. Colvin*, 2016 WL 4991605 (N.D.N.Y. Sept. 19, 2016). Here the form used by the doctors had a space asking that the doctor "briefly explain the cause of any of the above listed limitations and any objective findings." *See, e.g.*, Tr. at p. 740. Dr. Constantine left that section blank on two of the three forms he filled out. Tr. at pp. 740 & 743. None of the forms contained a detailed narrative explanation regarding the basis for Plaintiff's stated limitations. Tr. at pp. 740, 743, 844, & 847. Given the circumstances presented here, it was not error for the ALJ to

have viewed the opinions in the way she did. This is especially true in a case such as this where the objective medical evidence provides no evident basis for the deteriorating prognosis noted in those opinions.

Finally, the ALJ's decision specifically made reference to the specialties of the doctors in noting that Constantine was Plaintiff's primary care doctor and Orlando specialized in plastic surgery and hand surgery. Tr. at pp. 20 & 25.

Taken together, it is clear that Plaintiff's objection is more that she disagrees with the ALJ's analysis of the record, than that the ALJ failed to actually perform the analysis required under *Greek*. This argument is misplaced because "it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [her] position." *Gonzalez-Cruz v. Comm'r of Soc. Sec.,* 294 F. Supp. 3d 164, 187 (W.D.N.Y. 2018) (quoting *Warren v. Comm'r of Soc. Sec.,* 2016 WL 7223338, *6 (N.D.N.Y.), *report and recommendation adopted*, 2016 WL 7238947 (N.D.N.Y. 2016)). The ALJ's obligation is to explain her "decision explicitly and with sufficient specificity that a reviewing court can decide whether there are legitimate reasons for the ALJ's [decision] and whether [her] decision is supported by substantial evidence. *Stokes v. Comm'r of Soc. Sec.*, 2014 WL 4346427, at *15 (N.D.N.Y. Sept. 2, 2014). Here, the ALJ fulfilled that obligation.

For these reasons, the Court finds that the ALJ provided sufficient explanation for declining to afford controlling weight to the opinions of Doctors Constantine and Orlando.

### C. The ALJ's Residual Functional Capacity Determination

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012), *report and recommendation adopted,* 2013 WL 1180864 (N.D.N.Y. Mar. 20, 2013) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8).

In concluding that Plaintiff was capable of light work, with certain restrictions, the ALJ relied primarily on the consultative examinations of Rita Figueroa, M.D. and Jacqueline Santoro, Ph. D. both of which she afforded great weight. Tr. at p. 23. When

17

assessing a claimant's RFC, an ALJ is entitled to rely on such opinions because these consultants are qualified experts in the field of social security disability. 20 C.F.R. § 404.1513a; *see also Frey ex rel. A.O. v. Astrue*, 485 Fed. Appx. 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). Those opinions, taken together, concluded that Plaintiff had moderate limitations regarding walking on uneven terrain and using ladders, was able to follow simple directions and instructions, perform simple tasks while maintaining attention and concentration, learn new tasks, make appropriate decisions and deal with stress. Tr. at pp. 434-437 & 440-444. They noted no significant limitations in Plaintiff's ability to sit or stand. *Id.* The ALJ recounted relevant medical evidence in the record that supported these conclusions. Tr. at pp. 19-22. These findings were consistent with the definition of light work. *See* 20 C.F.R. § 404.1567(b).

Given that the ALJ's RFC conclusion that Plaintiff can perform light work was supported by substantial evidence, Plaintiff's final argument,[1] that she was capable only of sedentary work and thus entitled to a disability finding under the Grids, lacks merit.

---

[1] Notably, apart from her assertions regarding the manner in which the ALJ reviewed the opinions of her treating physicians, Plaintiff makes no other argument challenging the RFC determination.

*Lewis v. Comm'r of Soc. Sec.*, 2005 WL 1899399, at *4 n. 11 (N.D.N.Y. Aug. 2, 2005) (finding argument that Plaintiff was disabled under Subpart P grids moot considering "the court's determination that the ALJ properly found her capable of doing light work.")

### IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED,** that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED,** that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED,** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED,** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: March 4, 2019
    Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge